UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLIA LOR,<br><br>                    Plaintiff,<br><br>        v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security[1]<br><br>                    Defendant. | **Case No. 1:15-cv-01923-EPG**<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## I.    INTRODUCTION

Plaintiff Blia Lor seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for supplemental security income ("SSI") benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Erica P. Grosjean, United States Magistrate Judge.[2]

## II.    BACKGROUND AND PRIOR PROCEEDINGS[3]

Plaintiff was 47 years old at the time of her hearing before the Social Security Administration. AR 31. She does not speak English. AR 32. Plaintiff most recently worked as a assembly line worker for a produce company in 2004, although she only worked part-time. AR

---

[1] Consistent with Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill, the new acting Commissioner of Social Security, is substituted in place of Carolyn W. Colvin.
[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 7, 8.)
[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

189.  She previously received SSI benefits, but those benefits were terminated, apparently

because of the amount of financial resources Plaintiff possessed. AR 45. Plaintiff lives with her

husband and two of her children, neither of whom is a minor.  AR 31.  Her daily activities include

walking outside, watching TV, and visiting with friends and family. AR 33.

Plaintiff's alleged conditions are:  depression, numbness in her right hand, and an ulcer.

AR 188.  On March 30, 2012, Plaintiff filed an application for SSI under Title XVI, alleging a

disability beginning on January 23, 2006.  AR 167-178, 188.  The application was denied initially

on August 29, 2012 and on reconsideration on March 20, 2013.  AR 71-84, 102-108.  Plaintiff

filed a request for a hearing on April 4, 2013.  AR 126.  The hearing was then conducted before

Administrative Law Judge Sharon L. Madsen (the "ALJ") on April 1, 2014.  AR 27-46.  On May

12, 2014, the ALJ issued an unfavorable decision determining that Plaintiff was not disabled.  AR

14.  Plaintiff filed an appeal of this decision with the Appeals Council.  The Appeals Council

denied the appeal, rendering the ALJ's order the final decision of the Commissioner.  AR 1-6.

Plaintiff now challenges that decision, arguing that:  (1) The ALJ failed to apply a

presumption of continuing disability based on the Social Security Administration's previous

findings into the RFC; (2) the ALJ failed to adequately incorporate the opinion of reviewing

physician Uwe Jacobs; and, (3) the ALJ rejected the opinion of treating physician Maximo

Parayno.

Defendant contests Plaintiff's assessment, pointing out that:  (1) No presumption of

continuing disability applies when benefits are discontinued for non-medical reasons; (2) Dr.

Jacobs's opinion was appropriately translated into the RFC; and, (3) the ALJ correctly rejected

Dr. Parayno's notes because they were inconsistent with the rest of the medical record.

**III.    THE DISABILITY DETERMINATION PROCESS**

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or

she is unable to engage in substantial gainful activity due to a medically determinable physical or

mental impairment that has lasted or can be expected to last for a continuous period of not less

than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a

disability only if:

2

1
2
3
. . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

4   42 U.S.C. § 1382c(a)(3)(B).

5   To achieve uniformity in the decision-making process, the Commissioner has established

6   a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§

7   416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding

8   that the claimant is or is not disabled. 20 C.F.R. § 416.920(a)(4). The ALJ must consider

9   objective medical evidence and opinion testimony. 20 C.F.R. §§ 416.927, 416.929.

10   Specifically, the ALJ is required to determine: (1) whether a claimant engaged in

11   substantial gainful activity during the period of alleged disability, (2) whether the claimant had

12   medically-determinable "severe" impairments,[4] (3) whether these impairments meet or are

13   medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P,

14   Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to

15   perform his past relevant work,[5] and (5) whether the claimant had the ability to perform other jobs

16   existing in significant numbers at the regional and national level. 20 C.F.R. §§ 416.920(a)-(f).

17   Using the Social Security Administration's five-step sequential evaluation process, the

18   ALJ determined that Plaintiff did not meet the disability standard. AR 14-22. In particular, the

19   ALJ found that Plaintiff had not engaged in substantial gainful activity since March 30, 2012, the

20   date specified in her application. AR 16. The ALJ found that Plaintiff had the following severe

21   impairments: arthralgia, depressive disorder, and post-traumatic stress disorder. AR 16.

22   Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or

23   exceed any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 16.

24   Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to:

25

26   [4] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.920(c).

27   [5] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. § 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2

28   (9th Cir. 2007).

3

1   "lift and carry 50 pounds occasionally and 25 pounds frequently, and sit, stand and/or walk six to

2   eight hours per eight hour day. Additionally, she is limited to performing only simple, routine job

3   tasks."  AR 17.

4         Plaintiff had no past relevant work.  AR 21.  However, the ALJ determined that there were

5   jobs that existed in significant numbers in the national economy that Plaintiff could perform,

6   including hand packager, machine feeder, and box bender.  AR 21-22.

7   **IV.   STANDARD OF REVIEW**

8         Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine

9   whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards.

10   *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d

11   1071, 1074 (9th Cir. 2007).

12         "Substantial evidence means more than a scintilla but less than a preponderance."

13   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which,

14   considering the record as a whole, a reasonable person might accept as adequate to support a

15   conclusion."  *Id*.  "Where the evidence is susceptible to more than one rational interpretation, one

16   of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Id*.

17   **V.   DISCUSSION**

18        **A.  The Presumption of Continuing Disability**

19         Plaintiff previously qualified for SSI benefits, but those benefits were discontinued at

20   some point because she had more resources than are permitted to qualify for SSI benefits. In

21   general, a claimant for SSI benefits "bears the burden of proving that she is disabled." *Meanel v.*

22   *Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). However, "[t]he principles of res judicata apply to

23   administrative decisions, although the doctrine is applied less rigidly to administrative

24   proceedings than to judicial proceedings." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).

25   Thus, "'[o]nce a claimant has been found to be disabled . . . a presumption of continuing

26   disability arises in her favor,' and the burden shifts to the Secretary to 'produc[e] sufficient

27   evidence to rebut this presumption of continuing disability.'" *Medina v. Colvin*, Case No. 14-cv-

28   01967-DMR, 2015 WL 5448498, at *9 (N.D. Cal. Aug. 21, 2015), *quoting Bellamy v. Sec. of*

1    *Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985).

2           Plaintiff contends that the ALJ erred by failing to apply this presumption to her decision

3    and that the RFC and other findings in the previous decision should bind the current decision,

4    absent a showing of changed circumstances. Defendant argues that Ninth Circuit case law

5    precludes the application of this presumption where a claimant's benefits are terminated for non-

6    medical reasons. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1172 (9th Cir. 2008) ("while the

7    social security administrator may be foreclosed from reevaluating the disability determinations

8    for current beneficiary recipients, the administrator is not required to presume that a previous

9    disability has continued through a non-medically related termination of benefits.").

10          Defendant is correct that the ALJ need not have applied the presumption of continuing

11   disability to Plaintiff's case. The *Stubbs-Danielson* court expressly found that the Social Security

12   Administration need not apply the presumption under similar circumstances:

13          In *Warren v. Bowen,* 804 F.2d 1120 (9th Cir.1987) (per curiam), this court held
            that while the social security administrator may be foreclosed from reevaluating
14          the disability determinations for current beneficiary recipients, the administrator is
            not required to presume that a previous disability has continued through a non-
15          medically related termination of benefits. *Id.* at 1121. We examined then-existing
            regulations which provided that an applicant whose benefits were terminated for a
16          non-medical reason would not be required to resubmit evidence of his disability if
            the re-application came within one year of the prior termination. *Id.* (citing 20
17          C.F.R. § 416.1321(b) (1986)). We reasoned that such regulations supported the
            position that a presumption of disability should not extend to an applicant whose
18          re-application came almost three years—i.e., more than one year—after a non-
            medical termination. *Id.*

19          The existing regulations compel the same result in this case. The current
            regulations state that a claimant's benefits are suspended upon incarceration, and
20          after 12 months of continuous suspension, benefits are terminated. *See* 20 C.F.R.
            §§ 416.1325, 416.1335. While the regulations provide for the resumption of
21          suspended benefits upon an otherwise eligible recipient's release from custody,
            *see* 20 C.F.R. § 416.1325(b), they provide for no such reinstatement where a
22          recipient's eligibility has been terminated after 12 consecutive months of
            suspension. Accordingly, there is no basis for applying a presumption of
23          continuing disability where, as here, a claimant's reapplication comes at least 6
            years after a termination of benefits and more than 15 years after her previously
24          successful application.

25          Our decision in *Chavez v. Bowen,* 844 F.2d 691 (9th Cir.1988), does not compel a
            contrary result. In *Chavez,* we observed that principles of res judicata apply to
26          administrative decisions regarding disability and impose an obligation on the
            claimant, in instances where a prior ALJ has made a finding of non-disability, to
27          come forward with evidence of "changed circumstances" in order to overcome a
            presumption of continuing non-disability. *Id.* at 693. We also explained that a
28          previous ALJ's findings concerning residual functional capacity, education, and

work experience are entitled to some res judicata consideration and such findings cannot be reconsidered by a subsequent judge absent new information not presented to the first judge. *Id.* at 694. Stubbs–Danielson has cited no authority extending the principles of *Chavez,* which applied preclusive effect to a prior finding of non-disability, to the present context, an attempt to apply that same presumption to a prior finding of disability. Further, Stubbs–Danielson has not established that the ALJ improperly reconsidered prior findings, i.e., reconsidered prior findings based strictly on information already presented to the first judge. The entirety of the medical evaluations presented with respect to the present application were conducted after Stubbs–Danielson's 1984 initial disability determination. These evaluations necessarily presented new and material information not presented to the first ALJ.

*Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1172–73 (9th Cir. 2008).

Plaintiff's prior disability determination was issued on September 9, 2008. AR 47-55. At some point thereafter, her benefits were terminated for financial reasons. AR 45. In evaluating Plaintiff's new application for SSI benefits, the ALJ considered medical records and evaluations that post-dated Plaintiff's original disability finding. Thus, the ALJ did not need to apply a presumption that Plaintiff was still disabled.

Plaintiff contends that *Stubbs-Danielson* does not apply because, unlike the claimant in *Stubbs-Danielson*, Plaintiff's benefits were not terminated because of incarceration. But the language used by *Stubbs-Danielson* is not so restrictive—it summarizes the state of existing case law by saying that "the administrator is not required to presume that a previous disability has continued through a ***non-medically related termination*** of benefits." *Stubbs-Danielson*, 539 F.3d at 1172 (emphasis added). In other words, its language anticipates non-incarceration events that lead to the termination of benefits. Nor have later courts applying *Stubbs-Danielson* used such a confining interpretation. *See Trofimuk v. Comm'r of Soc. Sec.*, Case No. 2:12-cv-2482-KJN, 2014 WL 794343, at *5 (E.D. Cal. Feb. 27, 2014) (applying *Stubbs-Danielson* to find that claimant whose benefits were terminated because of her excess resources was not entitled to presumption of continuing disability). The ALJ was not required to apply the presumption of continuing disability to Plaintiff.

### B.  The ALJ's Treatment of Maximo Parayno, M.D.'s Medical Opinion

#### i.  Legal standards

The weight given to medical opinions depends in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals.  *Holohan v. Massanari*, 246

1  F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily,

2  more weight is given to the opinion of a treating professional, who has a greater opportunity to

3  know and observe the patient as an individual.  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th

4  Cir. 1996).

5       An ALJ may reject the *uncontradicted* opinion of a treating or examining medical

6  professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a

7  *contradicted* opinion of a treating or examining professional may be rejected for "specific and

8  legitimate" reasons.  *Lester*, 81 F.3d at 830.  While a treating professional's opinion is generally

9  accorded superior weight, if it is contradicted by an examining professional's opinion (when

10 supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews*

11 *v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995), *citing Magallanes v. Bowen*, 881 F.2d 747, 751

12 (9th Cir.1989).  The regulations require the ALJ to weigh the contradicted treating physician

13 opinion, *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001), but the ALJ need not give it any

14 weight if it is conclusory and supported by minimal clinical findings.  *Meanel v. Apfel*, 172 F.3d

15 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion

16 rejected); *see also Magallanes*, 881 F.2d at 751.

17                          *ii.  Analysis*

18      Between March 2011 and April 2012, Plaintiff saw Dr. Maximo Parayno at the Kings

19 Winery Medical Clinic. AR 259-284. On several occasions, Dr. Parayno conducted mental status

20 examinations of Plaintiff that described her as "depressed" and assessed her as having "poor":

21 memory, concentration/attention, and judgment/insight. AR 283. The ALJ found Dr. Parayno's

22 statements unpersuasive, saying that they are "not consistent with the other opinions of record or

23 the claimant's reported daily activities." AR 19.

24      Plaintiff contends that the ALJ did not articulate specific and legitimate reasons because

25 the ALJ does not cite to any records that contradict specific findings of Dr. Parayno. Defendant

26 argues that Dr. Parayno's conclusions were inconsistent with those of Dr. Swanson, a consulting

27 psychologist, because Dr. Swanson found that "[t]here is no genuine reason to believe that

28 [Plaintiff's] mental or emotional functioning falls sincerely outside normal limits." AR 297.

1    Neither side discusses the ALJ's finding that Dr. Parayno's opinion was inconsistent with

2    Plaintiff's daily activities.

3           An examining physician's opinion can constitute substantial evidence to reject a treating

4    physician's opinion if the examining physician's opinion "rests on his own independent

5    examination." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). While Dr. Swanson

6    agreed that Plaintiff had "poor" memory, concentration, and judgment, he qualified those

7    assessments by saying that Plaintiff "appeared motivated to make a case for disability by

8    exaggerating compromise in functioning." AR 296 ("Short-term, recent, and remote memories

9    were all poor; however, this appeared intentional . . . Concentration was inadequate for simple,

10   mathematical calculations (e.g., 22+39); however, this appeared intentional. Judgment and insight

11   were deemed poor . . . however, this appeared intentional."). Dr. Swanson ultimately concluded

12   that Plaintiff had few limitations in the workplace:

13           . . . Blia appeared motivated to make a case for disability by exaggerating
             compromise in functioning. There is no genuine reason to believe that her mental
14           or emotional functioning falls sincerely outside normal limits.

             Blia is judged able to maintain concentration and relate appropriately to others in
15           a job setting. She would be able to handle funds in her own best interests. She is
             expected to understand, carry out, and remember simple instructions. She is
16           judged able to respond appropriately to usual work situations, such as attendance,
             safety and the like. Changes in routine would not be excessively problematic for
17           her. There do not appear to be substantial restrictions in daily functioning.
             Difficulties in maintaining social relationships do not appear to be present.
18
     AR 297.
19
            Dr. Swanson does not appear to agree with Dr. Parayno regarding the impairments and
20
     limitations that Plaintiff possesses. The ALJ had the authority to resolve this conflict in arriving at
21
     her decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) ("The ALJ is responsible
22
     for determining credibility and resolving conflicts in medical testimony."); *see also Morgan v.*
23
     *Commr. of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) ("Determining whether
24
     inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are
25
     relevant to discount" medical opinions falls with the ALJ's responsibilities). "If the ALJ's finding
26
     is supported by substantial evidence, the court 'may not engage in second-guessing.'" *Tommasetti*
27
     *v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Dr. Swanson's opinion rests on his own,
28

                                                        8

1   independent examination of Plaintiff.  Dr. Swanson's opinion that Plaintiff is exaggerating her

2   symptoms was also shared by Steven Stoltz, M.D., a consulting physician. AR 288 ("She had

3   resistance to simple passive range of motion but was observed to move the right arm in a natural

4   way at other times during the interview and exam."). It was thus within the ALJ's authority to

5   give little weight to Dr. Parayno's opinion, based on its inconsistency with the record.

6           Moreover, the ALJ rejected Dr. Parayno's findings because they were inconsistent with

7   Plaintiff's daily activities. A Plaintiff's daily activities can constitute a specific and legitimate

8   reason to reject a medical opinion where the daily activities are inconsistent with that opinion.

9   *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).  Substantial evidence in the record

10  supports the conclusion that Plaintiff engaged in daily activities that were inconsistent with many

11  of Dr. Parayno's statements and conclusions. She reported to Dr. Swanson, for example, that she

12  "watches television, cooks, and takes walks." AR 295. She drives and "is independently able to

13  complete all activities of daily living." AR 295. She also noted that visits with friends and family.

14  AR 33. The ALJ's finding that Plaintiff's daily activities are inconsistent with Dr. Parayno's

15  assessment of Plaintiff is specific, legitimate, and supported by substantial evidence. It is also

16  unchallenged by Plaintiff. The ALJ was not in error in giving Dr. Parayno little weight.

17  **C.  The ALJ's Translation of Plaintiff's Limitations into the RFC**

18          *i.  Legal standards*

19  An "RFC is what an individual can still do despite his or her limitations":

20  RFC is an administrative assessment of the extent to which an individual's
    medically determinable impairment(s), including any related symptoms, such as
21  pain, may cause physical or mental limitations or restrictions that may affect his
    or her capacity to do work- related physical and mental activities. (See SSR 96-
22  4p, "Titles II and XVI: Symptoms, Medically Determinable Physical and Mental
    Impairments, and Exertional and Nonexertional Limitations.") Ordinarily, RFC is
23  the individual's *maximum* remaining ability to do sustained work activities in an
    ordinary work setting on a **regular and continuing** basis, and the RFC
24  assessment must include a discussion of the individual's abilities on that basis. A
    "regular and continuing basis" means 8 hours a day, for 5 days a week, or an
25  equivalent work schedule. RFC does not represent the *least* an individual can do
    despite his or her limitations or restrictions, but the *most*. RFC is assessed by
26  adjudicators at each level of the administrative review process based on all of the
    relevant evidence in the case record, including information about the individual's
27  symptoms and any "medical source statements" -- i.e., opinions about what the
    individual can still do despite his or her impairment(s)-- submitted by an
28  individual's treating source or other acceptable medical sources.

1   *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A.

2   July 2, 1996) ("SSR 96-8p").

3       The RFC assessment considers only functional limitations and restrictions which result

4   from an individual's medically determinable impairment or combination of impairments. SSR 96-

5   8p. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record

6   including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain,

7   that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Sec'y*

8   *Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). "The [ALJ] must also explain how any material

9   inconsistencies or ambiguities in the evidence in the case record were considered and resolved."

10  SSR 96-8p.

11              *ii.   Analysis*

12      Plaintiff contends that the ALJ failed to incorporate Plaintiff's limitations when creating

13  her RFC. In particular, Plaintiff points to Uwe Jacobs, Ph.D.'s opinion that Plaintiff was

14  "markedly limited" in her "ability to understand and remember detailed instructions." AR 96. The

15  ALJ limited Plaintiff to "performing only simple, routine job tasks," but Plaintiff contends that

16  this RFC does not adequately account for Dr. Jacobs' opinion. AR 17. Similarly, Dr. Jacobs

17  found that Plaintiff required a setting with "low social demands," but the ALJ appears not to have

18  incorporated that requirement into the RFC (or explained why it should not be incorporated). AR

19  97.

20      Defendant argues that the RFC is entirely consistent with Dr. Jacobs' opinion because it

21  included a limitation that Plaintiff could only perform simple, routine tasks. In other words,

22  Defendant claims that an RFC requiring "simple, routine" work accounts for the instructional and

23  social limitations Dr. Jacobs prescribes. The parties also engage in a discussion of the mental

24  requirements for unskilled work.

25      It is not clear from the ALJ's written decision whether the ALJ intended to include

26  Plaintiff's social and instructional impairments in the "simple, routine" portion of the RFC. In

27  fact, the portion of the ALJ's decision that discusses the "simple, routine" limitation refers only to

28  Plaintiff's abilities with respect to concentration, persistence or pace, rather than social or

10

instructional impairments:

> Similarly, Dr. Uwe Jacobs, the Disability Determination Service psychiatric consultant, noted the evidence contained numerous inconsistencies between providers. The clinical record does document traumatization as a possibility among refugees and the claimant takes medication for post-traumatic stress disorder. On the other hand, two experienced consultative examiners were of the opinion that the claimant's presentation was not genuine and that effort on examination was poor. There is no record of any psychiatric crisis or hospitalization; however, the claimant may have a moderate impairment of concentration, persistence or pace, but would retain the capacity for simple tasks.

AR 20.

Defendant may be correct and the ALJ may have intended the "simple, routine" portion of the RFC to account for Plaintiff's social and instructional limitations. It may also be, however, that the "simple, routine" portion of the RFC was intended only to account for Plaintiff's limitations in concentration, persistence, and pace. The ALJ's written decision supports the latter version of events; there is no reference to Plaintiff's social or instructional limitations, despite the fact that the ALJ apparently accepted Dr. Jacobs's conclusions.

This is a material ambiguity in the ALJ's decision because the hypotheticals that the ALJ eventually posed to the vocational expert, which were based on the RFC, omitted any social or instructional limitations. *Adams v. Colvin*, Case No. 14-4649-DOC E, 2015 WL 667670, at *3 (C.D. Cal. Jan. 13, 2015) (ALJ created material ambiguity when "the ALJ's first hypothetical question omitted mention of any moderate difficulty in understanding, remembering and carrying out detailed instructions," despite accepting physician opinion that included that limitation); *King v. Colvin*, Case No. ED CV 12-921-PLA, 2013 WL 693003, at *10 (C.D. Cal. Feb. 25, 2015) ("to the extent the ALJ did *not* reject Dr. Kania's opinion that plaintiff is precluded from detailed instructions (but believed it to be encompassed by the limitation to 'simple, repetitive tasks,' for example), the ALJ's hypothetical question to the VE did not *clearly* incorporate the limitation that plaintiff cannot perform '[any]thing that require[s] detailed instructions.' . . . Since the ALJ did not give an adequate reason to reject Dr. Kania's opinion that plaintiff cannot carry out detailed instructions, the Court cannot conclude that the hypothetical question to the VE 'set out *all* [of plaintiff's] limitations and restrictions.'"). Without any explanation by the ALJ, it is impossible to tell from the existing record how the social and instructional limitations were considered and

resolved.

The record in this case is therefore ambiguous and requires clarification with respect to Plaintiff's work-related abilities and the existence of jobs in the national economy that Plaintiff may be able to perform. Further administrative review may resolve this ambiguity—the ALJ need only consider whether all of Dr. Jacobs's conclusions are supported by the record and, if they are so supported, incorporate them into the RFC. Alternatively, the ALJ could find that Dr. Jacobs's conclusions with respect to Plaintiff's instructional and social limitations are not supported by the record and decline to incorporate them into the RFC. In either instance, however, the appropriate course is to remand the case so that the ALJ may further articulate her reasoning. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

## VI.   CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record or free of clear legal error.  Accordingly, this Court GRANTS Plaintiff's appeal from the administrative decision of the Commissioner of Social Security and the case is REMANDED to the Social Security Administration. On remand, the Social Security Administration shall further consider Dr. Uwe Jacobs's opinion and medical conclusions consistent with this order.  The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Blia Lor and against Defendant Nancy A. Berryhill, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **February 7, 2017**                    /s/ Erica P. Grosjean
                                                             UNITED STATES MAGISTRATE JUDGE